# EXHIBIT A



FILED

17 JUL 27 PM 2:03

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-19988-5 SEA

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| T-MOBILE NORTHEAST, LLC, a Delaware corporation, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| SELECTIVE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

Plaintiff T-Mobile Northeast, LLC, by and through its attorneys, alleges as follows:

## I.  INTRODUCTION

1.      Plaintiff T-Mobile Northeast, LLC brings this action for a declaratory judgment pursuant to the Washington Uniform Declaratory Judgment Act, RCW Ch. 7.24, *et seq.* Plaintiff seeks an order adjudicating the respective rights, duties and obligations of the parties under a policy of insurance issued by Defendant Selective Insurance Company of America as well as additional relief as set forth in greater detail below.

## II.  PARTIES

2.      Plaintiff T-Mobile Northeast, LLC ("T-Mobile NE" or "Plaintiff") is a limited liability company organized under the laws of the State of Delaware.  T-Mobile NE is a

COMPLAINT – 1

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

wholly-owned subsidiary of T-Mobile USA, Inc. ("T-Mobile USA"), which is the sole member and the parent company of T-Mobile NE. During all relevant periods, T-Mobile NE was the successor-in-interest of a limited liability company known as Omnipoint Communications, LLC ("Omnipoint").

3.     Defendant Selective Insurance Company of America ("Selective" or "Defendant") is an insurance company. At all relevant times, Selective has been engaged in the business of selling policies of insurance within the state of Washington.

### III.     JURISDICTION AND VENUE

4.     Plaintiff invokes the jurisdiction of this Court pursuant to the Washington Uniform Declaratory Judgment Act, RCW 7.24, *et seq.* and the Washington Consumer Protection Act, RCW 19.86, *et seq.* The Court has jurisdiction to determine questions of actual controversy between the parties to this action as discussed more fully below.

5.     Venue is proper in this Court pursuant to RCW 4.12.025, because Selective transacts business within King County. Venue is also proper in this Court because a substantial part of the events or omissions giving rise to this action occurred in King County, including Selective's improper claims handling as discussed below.

### IV.     FACTUAL ALLEGATIONS

#### SELECTIVE ISSUES AN INSURANCE POLICY UNDER WHICH T-MOBILE NE QUALIFIES AS AN ADDITIONAL INSURED

6.     In consideration of substantial premium payments, Selective issued a policy of insurance to a New Jersey company named Innovative Engineering Inc. ("Innovative") numbered S164349108, with policy period from January 16, 2012 to January 16, 2013 (the "Policy").

7.     On information and belief, Innovative paid Selective all premiums owing and due under the Policy and complied with all applicable conditions contained in the Policy.

COMPLAINT – 2

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

8.     T-Mobile NE qualifies an additional insured under the Policy issued to Innovative by Selective, a fact that Selective has never disputed.

9.     Specifically, the Policy contains an endorsement that amends the Policy's "Who is an Insured" provision to automatically extend additional insured status to "any person or organization whom you have agreed in a written contract or written agreement to add as an additional insured on your policy" (the "Additional Insured Endorsement").

10.     Innovative performed work for Omnipoint and/or T-Mobile NE pursuant to agreements under which Innovative was obligated to obtain insurance coverage naming Omnipoint and/or T-Mobile NE as an additional insured under its insurance policy.

11.     Innovative and Omnipoint entered into one such agreement in 2000 ("2000 PSA").

12.     Innovative and T-Mobile NE entered into another such agreement in 2010 ("2010 FSA").

13.     The 2000 PSA expressly obligated Innovative to secure general liability insurance covering its operations that also named Omnipoint as an additional insured and included a "full waiver of subrogation" in favor of Omnipoint.  The 2000 PSA also expressly obligated Innovative to provide "Certificates of Insurance" accompanied by an additional insured endorsement designating Omnipoint as an additional insured.

14.     The 2010 FSA expressly obligated Innovative to secure general liability insurance covering its operations that included a "waiver of subrogation in favor" of T-Mobile USA and "its affiliates and subsidiaries" and to provide "Certificates of Insurance" naming T-Mobile NE "as an additional insured" under that insurance.

15.     Innovative obtained the insurance for itself and for Omnipoint and/or T-Mobile NE required by these agreements from Selective.

16.     The agreements between Innovative and Omnipoint and/or T-Mobile NE

COMPLAINT – 3

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

qualified as agreements by which Innovative agreed to add Omnipoint and/or T-Mobile NE as an additional insured under the Additional Insured Endorsement.

17.     Accordingly, Selective's authorized agent, the Van Dyk Group, issued a number of certificates of insurance indicating that Innovative had obtained the insurance required by its agreements with Omnipoint and/or T-Mobile NE.  One such certificate, issued January 18, 2012 (the "2012 COI") expressly stated that T-Mobile USA and its affiliates and subsidiaries like T-Mobile NE were additional insureds under Selective's Policy.

18.     Specifically, the 2012 COI expressly stated that "T-Mobile USA Inc., [and] its Subsidiaries and Affiliates" were "included as an additional insured with respect to [the] General Liability, Auto and Excess Liability" coverage sections of the Policy.

19.     Selective had executed an agency agreement with the Van Dyk Group prior to 2012 and that agreement remained in effect at the time the Van Dyk Group issued the 2012 COI.

20.     The Van Dyk Group was acting within its actual and/or apparent authority as Selective's authorized agent when it issued the 2012 COI to T-Mobile USA.

21.     The Van Dyk Group had also routinely issued certificates of insurance to Omnipoint, T-Mobile NE, and/or T-Mobile USA.

22.     Per the subsequent testimony of Selective's own witnesses, Selective was aware of those activities, had never objected to the Van Dyk Group issuing certificates of insurance on its behalf, and had never taken the position that a certificate of insurance issued by the Van Dyk Group on its behalf was not binding on Selective.

**INNOVATIVE AND T-MOBILE NE ARE SUED IN AN UNDERLYING LAWSUIT AND BOTH PARTIES TENDER THE CLAIMS AGAINST THEM TO SELECTIVE**

23.     On or around April 23, 2013, a lawsuit was filed against T-Mobile USA entitled *Virginia Properties, LLC v. T-Mobile USA, et al.* (hereafter the "Underlying

COMPLAINT – 4

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Lawsuit"). Plaintiff Virginia Properties, LLC's claims in the Underlying Lawsuit arose out of work Innovative performed on a building for T-Mobile NE.

24.     The plaintiff in the Underlying Lawsuit subsequently amended its complaint to name T-Mobile NE as the sole T-Mobile entity defendant.

25.     Innovative's work for T-Mobile NE as referenced in the Underlying Lawsuit was performed pursuant to the foregoing agreements under which Innovative was obligated to obtain insurance coverage naming Omnipoint and/or T-Mobile NE as an additional insured under its insurance policies.

26.     Those agreements met the terms of the Policy's Additional Insured Endorsement and entitled T-Mobile NE to additional insured status as further evidenced by the 2012 COI issued to T-Mobile USA by Selective's authorized agent.

27.     Innovative tendered the claims against it in the Underlying Lawsuit to Selective and requested that Selective fund its defense of those claims.

28.     Relying on the 2012 COI issued by Selective's authorized agent (which, again, represented that T-Mobile USA and its affiliates and subsidiaries like T-Mobile NE qualified as additional insureds under the Policy), T-Mobile USA also tendered the claims in the Underlying Lawsuit to Selective through a third-party claims administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), in February of 2013 and requested that Selective fund its defense ("Claim").

**SELECTIVE CONDUCTS AN UNREASONABLE AND INADEQUATE INVESTIGATION BEFORE SUMMARILY DENYING COVERAGE WITHOUT RAISING THE TENDER DEFENSE**

29.     Selective's conduct in investigating, responding to, and ultimately denying the Claim was unreasonable, unfair, and deceptive and violated Washington law applicable to insurance claims handling practices.

30.     Specifically, the initial claims handler assigned to investigate the Claim, Kary

COMPLAINT – 5

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Cyprian, never contacted T-Mobile NE or T-Mobile USA directly as part of her investigation of the Claim and never asked Sedgwick about the 2012 COI or any other certificates of insurance issued to T-Mobile NE or T-Mobile USA by the Van Dyk Group.

31.    Instead, Ms. Cyprian reviewed the Policy and the agreements between Innovative and Omnipoint/T-Mobile NE requiring Innovative to name Omnipoint and/or T-Mobile NE as an additional insured under its insurance policy, concluded that they created a potential for coverage under the Policy's Additional Insured Endorsement, and reached the initial conclusion that T-Mobile NE was a "potential additional insured" under the Policy in April of 2013.

32.    At no time did Ms. Cyprian identify any issues with regard to the form of tender of the Claim, including, but not limited to, the allegation later raised by Selective that the tender was allegedly defective because it was made by T-Mobile USA instead of T-Mobile NE ("Tender Defense").

33.    Indeed, Ms. Cyprian never raised the Tender Defense, much less provided notice of that issue to T-Mobile USA, T-Mobile NE, or Sedgwick during her investigation of the Claim.

34.    Despite reaching her initial conclusion that Selective likely owed coverage because T-Mobile NE qualified as a potential additional insured, Ms. Cyprian did not timely accept coverage for the Claim or communicate her initial conclusions about the Claim to T-Mobile USA, T-Mobile NE, or Sedgwick.

35.    Indeed, as of July of 2013, five months after to the Claim was tendered to Selective, Selective had still not substantively responded to T-Mobile USA, T-Mobile NE, or Sedgwick about the Claim.

36.    In July of 2013, Selective re-assigned the Claim to a different adjuster, Michael Parlin.

COMPLAINT – 6

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

37.     Mr. Parlin reached the initial conclusion that the Claim and Innovative's related claim were barred by the Policy's exclusion for claims arising out of professional negligence (the "Professional Negligence Exclusion") the very same day, an exclusion that purports to exclude coverage for claims arising out of "professional" services.

38.     Mr. Parlin communicated this position to Innovative's professional liability insurer, CNA, that same day, indicating that Selective intended to deny Innovative's claim on the basis of the Professional Negligence Exclusion.

39.     CNA responded the following day, reminding Mr. Parlin that Selective was obligated to provide Innovative a defense even if it was unclear whether Selective was ultimately obligated to indemnify Innovative under the Policy due to the Professional Negligence Exclusion.

40.     As a result of CNA's letter, Mr. Parlin subsequently admitted under oath that he asked an in-house attorney at Selective, Kenneth Malamud, to analyze whether Selective was obligated to provide Innovative a defense under the Policy despite the presence of the Professional Negligence Exclusion.

41.     Mr. Parlin subsequently admitted under oath that Mr. Malamud provided Mr. Parlin with a formal coverage opinion addressing the question of whether a defense was owed Selective's insureds under the Policy ("Coverage Opinion").

42.     As a result of Mr. Malamud's Coverage Opinion, Mr. Parlin subsequently admitted under oath that he concluded that Selective owed a duty to defend under the Policy in spite of the presence of the Professional Negligence Exclusion.

43.     Mr. Parlin communicated his conclusion that Selective owed Innovative a duty to defend under the Policy to Innovative on July 23, 2013 by way of a letter setting forth Selective's agreement to defend Innovative pursuant to a reservation of rights (the "July 23, 2013 Letter").

COMPLAINT – 7

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

44.     On information and belief, Selective did provide Innovative the defense it had promised to Innovative and has not subsequently contested Innovative's right to coverage for that defense.

45.     The Claim was pending and assigned to Mr. Parlin before he reached the conclusion that a defense was owed Innovative under the Policy on July 23, 2013.

46.     Mr. Parlin was in possession of the 2000 PSA and the 2010 FSA at the time he reached the conclusion that a defense was owed to Innovative under the Policy on July 23, 2013.

47.     Mr. Parlin was also in possession of a third-party complaint in the Underlying Lawsuit at the time he reached the conclusion that a defense was owed to Innovative under the Policy on July 23, 2013.

48.     That third-party complaint expressly stated that Omnipoint was a "merged Delaware corporation that no longer conducts business, its assets and operations having been transferred to its successor, T-Mobile Northeast LLC" and that "[a]t all relevant times, T-Mobile NE and its predecessor Omnipoint were wholly owned subsidiaries of T-Mobile USA."

49.     Despite these facts, Mr. Parlin did not inform T-Mobile NE, T-Mobile USA, or Sedgwick of his conclusion that Selective owed Innovative a duty to defend under the Policy or that the Professional Negligence Exclusion did not impact Selective's duty to provide that defense.

50.     To the contrary, Mr. Parlin did nothing further in response to the Claim between July of 2013 and February of 2015.

51.     Mr. Parlin did not provide a formal response to the Claim during that period.

52.     Mr. Parlin did not raise the Tender Defense during that period.

53.     Indeed, Mr. Parlin did not initiate any communications with T-Mobile NE, T-

COMPLAINT – 8

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    Mobile USA, or Sedgwick during that period.

2        54.    After having received no response to T-Mobile NE's tender for more than two

3    years, Sedgwick sent a follow-up demand to Selective to assume defense of the Claim on

4    February 25, 2015.

5        55.    Mr. Parlin received that demand on February 26, 2015.

6        56.    Once again, Mr. Parlin did not do anything further to investigate the Claim or

7    indicate that he required additional information from T-Mobile NE, T-Mobile USA, or

8    Sedgwick to properly investigate or evaluate the Claim.

9        57.    Mr. Parlin instead denied the Claim that same morning.

10       58.    Mr. Parlin subsequently admitted under oath that, despite his own conclusion

11   more than 18 months earlier that Selective owed Innovative a duty to defend in spite of the

12   presence of the Professional Negligence Exclusion and the advice of counsel that Mr. Parlin

13   had received on that very issue, he denied coverage based on his conclusion that the Claim

14   was barred by the Professional Negligence Exclusion.

15       59.    Mr. Parlin subsequently admitted that his treatment of Innovative's claim and

16   the Claim was inconsistent.

17       60.    Mr. Parlin subsequently admitted under oath that he did not deny coverage

18   based on the Tender Defense.

19       61.    Indeed, Mr. Parlin subsequently admitted under oath that he did not identify

20   any issues during his investigation relating to any alleged insufficiencies with regard to the

21   tender of the Claim.

22       62.    As a result, Mr. Parlin did not reach the conclusion before denying coverage

23   that a tender of the Claim needed to be made specifically on behalf of T-Mobile NE and that

24   the existing tender was allegedly defective because it was made by T-Mobile USA, T-

25   Mobile's NE's parent corporation and sole member.

COMPLAINT – 9

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

63.     Selective was aware of Mr. Parlin's testimony in this regard by, at the very latest, his deposition in March of 2017.

64.     Mr. Parlin did not communicate any issues relating to or based on the Tender Defense to T-Mobile USA, T-Mobile NE, or Sedgwick before denying coverage or thereafter, including, but not limited to, the position that a tender needed to be made specifically on behalf of T-Mobile NE and that the existing tender was allegedly defective because it was made by T-Mobile USA, T-Mobile's NE's parent corporation and sole member.

65.     Instead, Mr. Parlin's email denying the Claim attached a copy of his July 23, 2013 Letter by which Selective accepted Innovative's tender and stated that Selective's denial of the Claim was "[b]ased on this letter . . . ."

66.     Mr. Parlin subsequently admitted under oath that his failure to address the Claim for more than a year and a half, his inconsistent and contradictory denial of the Claim on the same basis as Selective had accepted Innovative's tender, and his failure to adequately and reasonably explain the basis for Selective's denial of the Claim constituted improper claims handling.

67.     Mr. Parlin also admitted that Selective's decision denying coverage for the Claim was likely incorrect under the language of the Policy, and in particular, under the Additional Insured Endorsement given the agreements between Innovative and Omnipoint and/or T-Mobile NE by which Innovative agreed to name T-Mobile NE as an additional insured under its insurance policy.

68.     Mr. Parlin also admitted under oath that his conduct in investigating the Claim also violated Selective's own internal claims handling guidelines, which required him to timely respond to claims for coverage within 14-30 days (as opposed to the more than two years it took Selective to ultimately deny the Claim) and further required Selective to send the claimant a detailed, written explanation of the relevant policy language and the purported

COMPLAINT – 10

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

reasons for its denial of a claim (as opposed to the cursory and contradictory denial letter sent by Mr. Parlin) so that policyholders have an opportunity to cure any purported defect in their tender.

### T-MOBILE USA REQUESTS THAT SELECTIVE RECONSIDER ITS DENIAL OF COVERAGE AND SELECTIVE'S IMPROPER CLAIMS HANDLING CONTINUES

69.     Sedgwick reached out to Mr. Parlin again in March of 2015 to reiterate the pending demand for coverage.

70.     Mr. Parlin subsequently admitted that he did not conduct any further investigation into the Claim and did not respond with regard to the Claim in March of 2015.

71.     Mr. Parlin subsequently admitted that this failure to do so violated Selective's own claims handling procedures.

72.     Mr. Parlin did not assert any issues relating to or based on the Tender Defense to T-Mobile USA, T-Mobile NE, or Sedgwick in March of 2015, including, but not limited to, the position that a tender needed to be made specifically on behalf of T-Mobile NE and that the existing tender was allegedly defective because it was made by T-Mobile USA, T-Mobile's NE's parent corporation and sole member.

73.     On August 14, 2015, a representative of T-Mobile USA and T-Mobile NE – T-Mobile's Insurance & Claims Manager – emailed Mr. Parlin and requested an explanation of his denial in light of Mr. Parlin's own conclusion (as memorialized in the July 23, 2013 Letter) that Selective did owe a duty to defend its insureds under the Policy.

74.     Once again, Mr. Parlin failed to provide a substantive explanation of Selective's contradictory coverage position.

75.     Mr. Parlin instead requested an outside attorney he had previously spoken to about the Underlying Litigation, Dan Kohane, to respond to the email.

76.     Mr. Parlin subsequently testified under oath that he asked Mr. Kohane to

COMPLAINT – 11

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

assume responsibility for responding as an extension of Mr. Parlin's own claims handling responsibilities, that Mr. Kohane was not acting as a lawyer when performing that task, and that there was no expectation of litigation at the time.

77.    Mr. Kohane eventually responded in an email dated August 19, 2015 ("Kohane Email"), indicating that:

> Innovative is the named insured under the Selective policy, S 164349108. T-Mobile is not.    Selective is defending its insured pursuant to a reservation of rights/partial disclaimer.
>
> **T-Mobile does not appear in the Selective Policy named as an insured. It does not qualify as an additional insured.** That is why Selective is not defending T-Mobile.

78.    Mr. Parlin subsequently admitted during his deposition that the Kohane Email did not provide any explanation as to why T-Mobile USA did not allegedly qualify as an additional insured under the Policy.

79.    Selective was aware of Mr. Parlin's testimony in this regard by, at the very latest, March of 2017.

80.    The Kohane Email did not indicate that Mr. Parlin had denied coverage based on the Professional Negligence Exclusion, the reason subsequently identified by Mr. Parlin under oath as the only basis for his denial of coverage for the Claim.

81.    The Kohane Email did not raise any issues relating to the Tender Defense, including, but not limited to, the position that a tender needed to be made specifically on behalf of T-Mobile NE or that the existing tender was allegedly defective because it was made by T-Mobile USA, T-Mobile's NE's parent corporation and sole member.

82.    Indeed, the Kohane Email did not discuss any distinction between T-Mobile USA and T-Mobile NE or contain the word "tender."

### T-MOBILE USA FILES SUIT AGAINST SELECTIVE

COMPLAINT – 12

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**AND SELECTIVE ASSERTS FOR THE VERY FIRST TIME THAT**
**T-MOBILE NE'S INITIAL TENDER WAS ALLEGEDLY INADEQUATE**

83. On September 21, 2015, T-Mobile USA filed a lawsuit against Selective in King County Superior Court asserting claims for declaratory judgment, breach of contract, insurance bad faith, attorney's fees, coverage by estoppel, violation of the Washington Insurance Fair Conduct Act, and violation of the Washington Consumer Protection Act (the "T-Mobile USA Coverage Action").

84. On November 4, 2015, Selective filed a notice of removal removing the T-Mobile USA Coverage Action to the United States District Court for the Western District of Washington.

85. On January 21, 2016, T-Mobile USA served discovery requests asking Selective to provide a full explanation of all facts known regarding Mr. Parlin's denial of coverage.

86. Specifically, T-Mobile USA's discovery requests asked Selective to "[d]escribe, with specificity, the facts, conditions, limitations, and exclusions underlying each such defense" that it relied on in denying T-Mobile USA's claim for coverage or that it believed barred coverage for the Claim.

87. On March 7, 2016, Selective provided responses to those requests.

88. Selective's discovery responses did not refer to the Kohane Email in any way.

89. Selective's discovery responses did not indicate that the Kohane Email allegedly constituted notice to T-Mobile USA of the Tender Defense as of August 19, 2015.

90. On March 8, 2017, T-Mobile USA deposed Mr. Parlin and secured the admissions noted above.

91. Mr. Parlin admitted that the only basis upon which he denied coverage for the Claim was the Professional Negligence Exclusion.

92. Mr. Parlin admitted that the Tender Defense played no role whatsoever in his

COMPLAINT – 13

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    denial of coverage.

2        93.    Mr. Parlin admitted that he had never raised that issue or the sufficiency of T-

3    Mobile USA's tender with T-Mobile USA, T-Mobile NE, or Sedgwick as a result.

4        94.    Mr. Parlin admitted that the Kohane Email did not provide any explanation of

5    the basis for his denial of coverage.

6        95.    Selective was aware of these admissions by, at the very latest, March of 2017.

7        96.    On March 23, 2017, T-Mobile USA moved for partial summary judgment.

8        97.    T-Mobile USA's motion was based, in part, on the argument that Selective

9    should be equitably estopped from denying coverage based on the Tender Defense because:

10   (a) Mr. Parlin had already admitted that the Tender Defense was not the actual basis upon

11   which he denied coverage; (b) Mr. Parlin did not timely raise that defense to T-Mobile USA,

12   T-Mobile NE, or Sedgwick as a result; and (c) T-Mobile USA suffered prejudice as a result of

13   Mr. Parlin's failure to do so because it could have submitted a tender on behalf of its wholly

14   owned subsidiary, T-Mobile NE, if Selective had actually raised the Tender Defense before

15   denying coverage.

16       98.    On April 10, 2017, Selective responded to T-Mobile USA's motion for partial

17   summary judgment and filed its own cross-motion for summary judgment.

18       99.    While Selective's initial briefing on the parties' cross-motions for summary

19   judgment asserted the Tender Defense, it did not in any way raise the assertion that the

20   Kohane Email allegedly provided T-Mobile with pre-litigation notice of its assertion of the

21   Tender Defense such that T-Mobile USA could have cured that alleged defect by making

22   tender on behalf of T-Mobile NE.

23       100.   Selective's opposition to T-Mobile USA's motion instead failed to address T-

24   Mobile's equitable estoppel argument.

25       101.   For the first time on reply in support of its own motion, however, Selective

COMPLAINT – 14

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

asserted in pleadings filed in Washington State that: (a) Selective "**Denied Coverage Via the Tender Defense**"; and (b) Selective had allegedly raised the Tender Defense in the Kohane Email, arguing "T-Mobile USA was not prejudiced by any alleged late disclosure because it was aware of the Tender Defense on August 19, 2015."

102.    Mr. Parlin had previously testified under oath that he had denied coverage based on the Professional Negligence Exclusion.

103.    Mr. Parlin had previously testified that he had not denied coverage based on the Tender Defense.

104.    Selective was aware of Mr. Parlin's testimony on these issues by, at the latest, March of 2017.

105.    Selective's assertion that Mr. Parlin had "**Denied Coverage Via the Tender Defense**" was contrary to Mr. Parlin's prior testimony under oath that he had denied coverage based on the Professional Negligence Exclusion.

106.    Selective's assertion that Kohane Email contained an actual explanation of the basis for Mr. Parlin's denial of coverage was contrary to Mr. Parlin's prior testimony under oath confirming that the Kohane Email contained no such explanation.

107.    Selective's assertion that the Kohane Email disclosed the Tender Defense was also based on a mischaracterization of the language actually present in that email.

108.    Specifically, counsel for Selective asserted that the email indicated:

"Innovative is the named insured under the [SICA Policy]… T-Mobile [USA] is not. … T-Mobile [USA] does not appear in the [SICA Policy] named as an insured. It does not qualify as an [AI]. That is why [SICA] is not defending T-Mobile [USA]."

109.    The Kohane Email did not actually contain the word "USA."

110.    The Kohane Email did not refer to any alleged distinction between T-Mobile USA and T-Mobile NE for purposes of the Claim.

COMPLAINT – 15

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

111.   The Kohane Email did not provide notice of the Tender Defense as a result.

112.   The Court's order dismissing T-Mobile USA's coverage-related claims relied in large part on Selective's inaccurate and misleading representations regarding the Tender Defense as set forth above.

113.   Specifically, the Court's order relied on Selective's misrepresentations to find that Selective had informed T-Mobile USA of the allegedly defective nature of its tender via the Kohane Email, that "T-Mobile USA knew" Selective had drawn a distinction between T-Mobile USA and T-Mobile NE by that date as a result, and that Selective accordingly would not be estopped from relying on the Tender Defense to contest T-Mobile USA's ability to establish a prima facie right to coverage via the rights held by its wholly-owned subsidiary, T-Mobile NE.

114.   Each of the misrepresentations by Selective detailed above was made in Washington State after Selective knew of Mr. Parlin's contrary testimony.

115.   These misrepresentations made in Washington State constitute further evidence of Selective's bad faith conduct.

**SELECTIVE'S FAILURE TO ACCEPT ITS DUTY TO DEFEND T-MOBILE NE**

116.   As noted above, Mr. Parlin denied coverage on Selective's behalf on February 26, 2015.

117.   Selective has previously asserted that Mr. Parlin completed an adequate and thorough investigation of the Claim before denying coverage, indicating in prior pleadings that "Selective denies that it did not reasonably investigate" the Claim and that "Selective's claims handling and claims decision was reasonable."

118.   Both the 2000 PSA and the 2010 FSA were in Selective's possession at the time Mr. Parlin was investigating the Claim.

119.   Again, the 2000 PSA expressly obligated Innovative to secure general liability

COMPLAINT – 16

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

insurance covering its operations that also named Omnipoint as an additional insured and included a "full waiver of subrogation" in favor of Omnipoint. The 2000 PSA also expressly obligated Innovative to provide "Certificates of Insurance" accompanied by an additional insured endorsement designating Omnipoint as an additional insured.

120.    The 2010 FSA similarly obligated Innovative to secure general liability insurance covering its operations that included a "waiver of subrogation in favor" of T-Mobile and "its affiliates and subsidiaries" and "Certificates of Insurance" naming T-Mobile "as an additional insured" under that insurance.

121.    The third-party complaint in the Underlying Lawsuit was also in Selective's possession at the time Mr. Parlin was investigating the claim.

122.    Again, that third-party complaint expressly stated that Omnipoint was a "merged Delaware corporation that no longer conducts business, its assets and operations having been transferred to its successor, T-Mobile Northeast LLC" and that "[a]t all relevant times, T-Mobile NE and its predecessor Omnipoint were wholly owned subsidiaries of T-Mobile USA."

123.    Mr. Parlin admitted that the 2010 FSA was sufficient to establish T-Mobile NE's rights as an additional insured under the Policy.

124.    Mr. Parlin admitted that the 2010 FSA was present in his claims handling file at the time he denied coverage in February of 2015, more than two and a half years ago.

125.    Mr. Parlin and Selective had already spent more than 750 days allegedly investigating the Claim by the time that Mr. Parlin denied coverage on February 26, 2015.

126.    As a result, by Selective's own prior admissions, no further investigation of the Claim was necessary after the date of Mr. Parlin's denial of coverage in February of 2015.

127.    On June 28, 2017, following receipt of the District Court for the Western District of Washington's order granting in part Selective's cross-motion for summary

COMPLAINT – 17

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

judgment and creating an apparent distinction between T-Mobile USA and T-Mobile NE for purposes of tendering the Claim, T-Mobile USA's and T-Mobile NE's Insurance & Claims Manager located in Washington State wrote to Mr. Parlin to expressly tender the claim on behalf T-Mobile NE (the "Renewed Tender").

128.   As of the date of the Renewed Tender, more than 1,600 days had passed since the initial tendering of the Claim.

129.   1,452 days had passed since the Claim was reassigned to Mr. Parlin in July of 2013.

130.   854 days had passed since Mr. Parlin concluded that he had performed an adequate investigation of the Claim and denied coverage on February 26, 2015.

131.   At no point during this 1,452-day period did Mr. Parlin request additional information from T-Mobile USA, T-Mobile NE, or Sedgwick regarding the Claim or assert that any such additional information or investigation was necessary to determine coverage.

132.   To the contrary, again, Selective alleged that it performed a reasonable and complete investigation of the Claim before Mr. Parlin denied coverage in February of 2015, meaning that it had apparently concluded that it did need further information from Mobile USA, T-Mobile NE, or Sedgwick by February of 2015 at the latest.

133.   Selective had been in possession of the 2000 PSA and the 2010 FSA since February of 2015 at the very latest.

134.   Selective had also been in possession of the third-party complaint in the Underlying Lawsuit stating that T-Mobile NE was the successor-in-interest to Omnipoint since at least July of 2013.

135.   Selective had also been in possession of the Coverage Opinion confirming that a defense was owed under the Policy despite the Professional Negligence Exclusion since at least July of 2013.

COMPLAINT – 18

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

136.   Selective did not require any additional information from T-Mobile NE to verify coverage and agree provide a defense to T-Mobile NE as a result.

137.   Despite the fact that Selective did not reasonably require any additional information to determine coverage and that more than 1,600 days have now passed since the original tender of the Claim, Selective has not agreed to defend T-Mobile NE in the Underlying Lawsuit or otherwise requested any additional information from T-Mobile NE.

138.   To the contrary, Selective responded to the Renewed Tender on June 27, 2017 by denying coverage based on the Professional Negligence Exclusion – the same basis disclaimed by the Coverage Opinion years earlier.

139.   This conduct constitutes further evidence of Selective's bad faith.

140.   T-Mobile NE has and will continue to suffer harm as a result of Selective's improper conduct, including by incurring substantial defense costs in the Underlying Lawsuit that should be paid by Selective pursuant to its duty to defend.

## V.   FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT

141.   Plaintiff repeats and realleges paragraphs 1 through 140 as if fully set forth herein.

142.   By virtue of the conduct set forth above, Defendant breached its obligations to Plaintiff under the Policy.

143.   As a result of Defendant's failure to honor its obligations under the Policy, an actual and justiciable controversy exists between Plaintiff and Defendant as to Defendant's obligations under the Policy.

144.   Declaratory relief should be granted to Plaintiff holding that Defendant is obligated to defend and indemnify Plaintiff against the claims asserted in the Underlying Lawsuit.

COMPLAINT – 19

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## VI.   SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

145.   Plaintiff repeats and realleges paragraphs 1 through 144 as if fully set forth herein.

146.   By virtue of the conduct set forth above, by unreasonably interpreting the Policy, failing to perform a reasonable investigation of Plaintiff's claim, and failing to provide a defense to Plaintiff in the Underlying Lawsuit and reimburse Plaintiff under the Policy for defense costs it has incurred, Defendant breached the obligations set forth therein.

147.   As a direct and proximate result of Defendant's breach of the Policy, which is continuing to at least the date of this Complaint, Defendant has deprived Plaintiff of the benefit of the insurance coverage, damaging Plaintiff in an amount to be proven at trial.

## VII.   THIRD CAUSE OF ACTION
### ATTORNEY'S FEES

148.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 147 as if fully set forth herein.

149.   Plaintiff, as the insured in a legal action to obtain the benefits under an insurance policy, is entitled to attorney's fees and costs associated with compelling Defendant to fulfill its contractual obligations thereunder.

## VIII.   FOURTH CAUSE OF ACTION
### BAD FAITH

150.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 149 as if fully set forth herein.

151.   By virtue of the conduct set forth above, Defendant's failure to reasonably investigate, interpret, apply, and honor the terms of its insurance policies with Plaintiff constitutes a violation of Washington's insurance law and regulations and a breach of the

COMPLAINT – 20

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Defendant's duty of good faith and fair dealing.

152.   Accordingly, Plaintiff is entitled to damages, prejudgment interest, and attorney's fees from the Defendant.

## IX.   FIFTH CAUSE OF ACTION

### VIOLATION OF THE WASHINGTON STATE CONSUMER PROTECTION ACT

153.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 152 as if fully set forth herein.

154.   By virtue of the conduct set forth above, Defendant breached Washington's insurance law and regulations, a single violation of which constitutes a *per se* unfair trade practice under the Washington Consumer Protection Act. Independent of the duties imposed by Washington's insurance law and regulations, Defendant's conduct otherwise constitutes an unfair or unlawful practice in trade or commerce.

155.   Plaintiff has suffered an injury in its business or property as a result of Defendant's unfair or unlawful practices.

156.   Accordingly, Plaintiff is entitled to damages, treble damages, prejudgment interest, and attorney's fees from the Defendant.

## X.   SIXTH CAUSE OF ACTION

### ESTOPPEL

157.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 156 as if fully set forth herein.

158.   By virtue of the conduct set forth above, Defendant should be estopped from denying coverage to Plaintiff under the Policy, contesting its duty to defend, or otherwise asserting any defenses to coverage or that duty to defend.

### PRAYER FOR RELIEF

Plaintiff requests relief as follows:

COMPLAINT – 21

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

A.  For judgment declaring that Defendant is obligated to defend Plaintiff in the Underlying Lawsuit and to reimburse legal expenses incurred in the defense of the Underlying Lawsuit;

B.  For judgment declaring that Defendant is obligated to indemnify Plaintiff for any judgment entered against Plaintiff in the Underlying Lawsuit;

C.  For judgment declaring that Defendant's conduct amounted to bad faith;

D.  For judgment estopping the Defendant from denying coverage, contesting its duty to defend, or otherwise asserting any defenses to coverage or that duty to defend;

E.  For other damages as may be proven at trial;

F.  For an award of costs and attorney's fees;

G.  For an award of treble damages under the Washington Consumer Protection Act;

H.  For prejudgment interest; and

J.  For such other and further relief as the Court may deem just and equitable.

DATED this 27th day of July, 2017.

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP


s/ Michael A. Moore
Michael A. Moore, WSBA No. 27047
Kelly H. Sheridan, WSBA No. 44746
1001 Fourth Avenue, Suite 3900
Seattle, WA  98154-1051
(206) 625-8600 Phone
(206) 625-0900 Fax
mmoore@corrcronin.com
ksheridan@corrcronin.com
Attorneys for Plaintiff

COMPLAINT – 22

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900